Case number 20-5048 et al, Moose Jooce et al Appellants v. the Food and Drug Administration. Mr. Wood for Appellants, Ms. Powell for the Appellees. Good morning, counsel. Morning. Good morning, may it please the court. Jonathan Wood for the Appellant Vape Shops. The deeming rule imposes ruinous burdens on small vape shops and manufacturers like the Appellants. By FDA's own estimates, the rule will impose costs in excess of $100,000 for each product line, a prohibitively expensive burden that will force many companies to close. Yet despite the significant impacts, the rule was issued in violation of the Appointments Clause. The official that signed and issued the rule was not properly appointed. She was not nominated by the President, not confirmed by the Senate. Ultimately, FDA seeks to avoid scrutiny of this constitutional violation by asking the But these ratifications are contrary to the common law of agency, and therefore Supreme Court precedent. They cannot be squared with this court's precedence on ratification, and ultimately would render the Appointments Clause a dead letter in the rulemaking context. If an agency can deny a party relief this easily by a mere ratification, there's little reason for any plaintiff to try to vindicate the Constitution's core structural protections under the Appointments Clause. I'd like to begin by discussing why each ratification fails under this court's Supreme Court precedent. First, NRA Political Victory Fund says that ratifications are governed by the common law of agency. It cites favorably to the Wagner decision, which says that ratification cannot take place after a challenge to the action has already been filed. Here, that clearly is the case. The Gottlieb ratification did not take place until more than a year after this challenge was filed, and therefore it cannot be accepted. It also can- Did you make that argument in the district court? We did challenge the legitimacy of the Gottlieb ratification, and we relied on NRA Political Victory Fund for that. I understand that. The question is, did you make the argument you're currently making that it's after you filed a complaint? That the ratification- We did not make it with that amount of specificity, and partly that's due to how the ratification came up. The ratification was made in the midst of briefing, and our only opportunity to respond would have been in the reply brief. But moreover, as we explained in our brief, the court should reach the merits of that argument, even if it doesn't think we raised it below, in order to preserve orderly process. The alternative would be for this court to issue a decision that conflicts with Supreme Court precedent. And so for that reason, given the importance of the structural guarantee of the constitution and the need to reach the right result here, the court should- So we're talking about two different things here. I just want to be clear. You did not raise in the district court the post-filing of the complaint argument you are now making. Is that correct? Yes, we did not specifically make that argument. We did argue the case in our NRA Political Victory Fund. Yes. But we did not specifically call out its reference to Wagner. And Mr. Wood, if the ratification by Commissioner- I apologize, I don't actually know if it's Califf or Calif- was adequate, then that would not run into this problem, right? That's right, Your Honor. I pronounced it Califf. I apologize if I get that wrong too. But the Califf ratification did take place before the action was filed. The problem with it is that there is no evidence that Califf had any intent to ratify. The language- The government relies in part on Legitech, where we seem to find a pretty pro forma and broad brush and nonspecific ratification to be adequate. And in terms of actual support for and familiarity with the rule, the government points out that on- I think it's on the day the deeming rule was issued, that there was support from Califf. So we both know as a formal matter and as a substantive matter, and I recognize a press release is not- If the formal, if the sort of pro forma ratification weren't enough, I'm not sure that that would suffice. But there's not a question here, is there? I think there is a question about the validity of the Califf ratification. I agree with you, Your Honor, that the press release is clearly not enough. That does not satisfy the Appointments Clause. The official has to take responsibility for everything in the rule being issued. It would be like the equivalent of a judge letting a clerk write an opinion and issue it, and later saying, or even at the same time saying, this is great. That is not sufficient for the properly appointed official to take responsibility. But are there any cases in which we have actually looked at the sort of the substance of the articulation by the ratifying official and said, we don't really think that you considered this, and therefore that we invalidated it as not ratified? No, in part because this Court has never faced a ratification like this. This is true boilerplate. We're not arguing that Califf didn't consider some factor he should have, or wasn't specific enough. The language the government points to is something that is required under rule to include in every delegation document like this. But what about, I mean, what about Wilkes Barre and Legitech? I think we had language in Wilkes Barre that talks directly about how a ratifier doesn't have to go in and talk chapter and verse about what, they did a whole category of actions. NLRB summarily affirmed, right? That's right. I'm sorry, the reconstituted board ratified lots of actions altogether. Yes, Your Honor, that goes to a different question, whether the official properly considered everything he needed in order to ratify. This is about whether there was the intent to ratify in the first place. In all of those cases, whether the ratification itself or the circumstances around the ratification made clear that what the official was doing was ratifying in the face of an Appointments Clause problem. There was an official who is ratifying all that same official's prior actions before he or she had been properly appointed, or some other context made absolutely clear what was being done and why. Here, you're talking about a ratification that is included in every single delegation document under agency rule and reflects no intent to ratify Appointments Clause violations. Oh, I didn't even understand that that was the argument you were making in your brief. So you're saying that somehow they didn't intend to ratify this rule, but some other category of agency action? Yeah, well, yes. I think the best reading of the Califf ratification is that it is a standard boilerplate provision curing any past actions in violation of the delegation document. And so that's what it's purporting to ratifying cure. There is no evidence whatsoever that that boilerplate language has anything to do with Appointments Clause violations that Califf had in mind any Appointments Clause violations, much less this Appointments Clause violation. This is simply a case unlike any this court has ever considered. If this kind of boilerplate language satisfies for ratification, then I submit that no Appointments Clause claim could survive because these documents are put out all the time. I believe FDA has put out a version of this two or three times since the deeming rule came out, and every one of those would prohibit judicial review of every single Appointments Clause violation that preceded it. And so that's the problem with the Califf ratification. It's not that he didn't consider some factor that he should have or that he didn't provide enough detail. It's that there's neither any indication in the ratification itself or any of the circumstances surrounding it that he actually intended to ratify an Appointments Clause violation in this rule or any other. So what would support... Your rule would be that the agency would have to say, well, there's an Appointments Clause problem here, and therefore we're going to fix it? I think that would be a very easy case. You know, there may be other problems with the ratification, but at least in that case, you would know that the ratification was intended to ratify in the face of an Appointments Clause challenge. But I think you could also get it from context. Many of the cases that you referenced earlier, it was clear what the official was doing. It was either a board that was improperly constituted, reconstituted in compliance with the Appointments Clause, and then ratified all of its own prior actions. Everyone understood what the official or the board was doing in that context. Whereas here, you're talking about true boilerplate. There's no reason the government can point to to think that what Caleb was doing here was trying to ratify this rule and cure its Appointments Clause violation. So here, the agency did both. Belt and suspenders. Both before the issue really emerged, there was a ratification. You said, well, it didn't signal that the agency perceived that there was an Appointments Clause problem. And then once the agency did perceive, because suits had been filed, again, in a very detailed ratification, Commissioner Gottlieb ratified. And there you say, okay, that's a ratification. But you have a couple of arguments, I guess, that it was arbitrary and capricious because he should have started the rule-making process over again and built a new record, given that there might be further evidence. That seems contrary to... I mean, we review rules on the record on which they were made. And so unless there's no ratification at all, they have to be able to look at it on the record.  I disagree, Your Honor, because of the Appointments Clause violation, you have to discredit the original issuance of the rule. And you have to instead assume that the agency action would have been the ratification. Commissioner Gottlieb's ratification at the time that it was issued. And under... That's not really a ratification. That's a re-rule-making. A ratification looks back at something that may have been defective and says, we are going to consider this package, this closed universe and bolster it post hoc. I mean, that's sort of the nature of ratification. But I also gather that for you, the big difference, a big difference between the Califf ratification and the Gottlieb ratification is because the Gottlieb ratification was, after the case was filed, that it's only mooting and not resolving the Appointments Clause issue on the merits. We think it's both, yes. That there are reasons we argue that both ratifications fail under the law of ratification. To finish up on the last discussion, on the Gottlieb ratification, this court has said that a rubber stamp will suffice when there's no reason to think that a rule would come out differently if the agency were to repeat the APA process. Here, we've shown through the recent studies that are now before the agency and by reliance on Butte County, that that standard hasn't been satisfied. The agency simply can't show that it is inconceivable that a properly appointed official going through the rulemaking process would not result in a material change. But you're also right, Your Honor, that if the ratification were valid, that would only create a mootness issue. And here, it's a classic case of voluntary cessation. The agency has done nothing to ensure that this could not recur, that these sorts of constitutional violations might not resume. And for that reason, the court should reach the merits anyway. And I see that I'm in my rebuttal time. So unless there are further questions, I'll reserve the rest of my time. All right. Counsel for Apley. May it please the court. Lindsay Powell for FDA. What we're dealing with in this case is a belated challenge that plaintiffs are bringing. It's asserted more than a year and a half after the deeming rule was promulgated to a rule that both the HHS secretary and the commissioner of FDA have time and again expressed their approval for, both in general statements and through the formal ratifications that we're talking about now. And to plaintiff's point about the problem with ratification being that the agency can somehow avoid review and avoid correcting a lingering appointments clause problem through this mechanism, that overlooks what it is that ratification accomplishes. Ratification is a remedy. And so when a question is raised about the validity of the signing official, the person taking the action, it's entirely appropriate and indeed commendable for an agency to ratify that action in order to cure any possible defect. And so- In an agency at that point in the ratification, recite at least, I have reviewed the following couple of paragraphs of why they're satisfied to ratify. So in here, the Gottlieb ratification did take that form. We don't think that that is necessary. In every case, ratifications can take a variety, but Gottlieb did say that he had reviewed the record and explained why he was ratifying this. What about the first ratification? It wasn't in there, was it? The one book- No, no, it wasn't in there. That was a blanket ratification, more of the type seen in Wilkes-Barre and Legitech and I think particularly analogous is the ratification at issue in the Ninth Circuit's decision in CFPB versus Gordon. In all of these cases, the properly constituted board or properly appointed official asserted sort of across the board that it was ratifying all actions during a particular period. And that is what Califf was doing in the ratification here too. But we do know as has been mentioned from other evidence at the time that he was certainly aware of this rule in particular and emphatically agreed with it. So I know that- I'm sorry, Ms. Powell, how do you respond to Mr. Wood's point that if this is sufficient, doesn't it render the appointments clause something of a dead letter that any agency can have individuals who really aren't officers that are duly appointed under the constitution do all kinds of- perform all kinds of significant governmental activity and then do periodic blanket ratifications? It feels concerning and somewhat hollow. So we, I mean, as an initial matter, we do continue to take the position that Ms. Cox was a validly appointed inferior officer who had authority to promulgate this rule at the time that she did. I have a question, Ms. Powell. That wasn't the question you were asking. Yes, Your Honor. I am very happy to answer the question. I did just want to note that point. Please proceed to it. Yes, Your Honor. I do not think it raises this concern. There's certainly full accountability being taken by the agency in the way that it has ratified this rule. That is the purpose of the Appointments Clause. That is the principle that it safeguards that there is accountability. I understand that argument in this sense that I thought Judge Pillard was raising a different question. In other words, the Appointments Clause limits who can do certain actions. And if others who don't have that authority take that action, and then years later, persons who have the authority purport to ratify, then what is left of the limitations in the Appointments Clause? This Court's cases have never expressed this concern, notwithstanding the passage of time, as Your Honor notes. The one caveat to that, and this Court has described it as a very narrow exception applicable only to limited circumstances not presented here, but that's the situation we see in Landry, where you had a decision, like a recommending entity whose decision was not a decision at all, but subject by statute to further review by a deciding official. And there the Court found itself in a sort of catch-22 where it couldn't even decide the question about whether the entity making the recommendation was an officer without sort of prejudging ratification. But in Gettysburg, the Court specifically said that was limited. That was a very limited exception. Yes. All right. So here we're not in that area. Yes, Your Honor. So just to be clear on that, the catch-22 is because in order to come before a court, the kind of claimant raised in Landry would have to first exhaust and go through the Commission. Self and therefore be ratified, and therefore one could never get at the underlying appointments clause problem. Yes, by statute. Built in. It was automatic that there would be ratification. Whereas here, although the FDA has chosen to and might choose to have a rule of periodic ratification, it's not tied to the challenge itself in the same way that the door is open and then it's closed before one can access it. Yes, Your Honor. That's correct. I assume you were familiar with that. So the question here, though, is counsel argues that if courts did not have the authority, if Califf had no intent to ratify appointment clause violations, then we're at Commissioner Gottlieb. And you have to rely on that. And what is your response to the argument? Counsel has admitted they never raised this post-filing of the complaint. So that argument is not before us, or that challenge is not before us. But his other concerns about Commissioner Gottlieb's ratification is what I thought my question was getting at. And the way the brief is written for the FDA, I realize you just cite our cases and say we've approved everything, but the facts are different. And that's what the appellant is arguing. I take setting aside the timing question, which, as you know, is forfeited and is also foreclosed by this court's decisions. I understand the only other challenge to the validity of the Gottlieb ratification to be considered new evidence. And that is also foreclosed by this court's decision. It is true here that we are in a rulemaking context rather than the enforcement context that you see in Legitech or what. But the difference in context doesn't provide any basis for a difference in outcome here. In both cases, the- Well, that's what you're saying, and I know we said it in two cases, but we actually don't know what is in those studies. And who knows? There isn't any suggestion here that the agency necessarily would come to the same conclusion even if he had looked at the studies. So I don't think the court needs to refer to this evidence, but there actually is a very strong basis for concluding that the agency would reach the same conclusion. What FDA said at the time was that even if- So can I just ask you, how do we know what is in those studies? Well, we are taking plaintiff's contention at their word at this point that they're suggesting that there may be evidence that puts e-cigarettes in a more favorable light, but plaintiffs and others like in the same position as they are have been making that argument since the comment period for the deeming rule. So this is actually not new in any sense. I'm trying to understand about our precedent is in the two cases that are referenced, we have been very clear that the agency would reach the very same conclusion. And here, I gather now that FDA is willing to assume that appellant's argument about the nature of those studies is such that it would put an entirely different light on its client's products? No, Your Honor, we are positioned, and I'm sorry if I was unclear, these studies are more of the same. These studies do not bring anything new. And what FDA said- Counsel, but my question is, how do we know? And you said you were relying on what appellant's counsel said. I just want to be clear. I don't see our court so far to have dealt with the question about if there is new evidence out there and the ratification comes much later. I thought your response was, well, the record closed two years earlier. So what the studies might say, even if they totally undermine the reasoning of the original deeming rule, it's all irrelevant. Yes, yes, we do say that. A ratification is not a new rulemaking. It is a look back at what was- and that look back needs to happen on the record as it was compiled. So FDA undertook a very robust rulemaking process here, accepting comment, extending that comment period, considering there were over 130,000 comments here. And that is the rulemaking record that we have. That's what Commissioner Gottlieb looked at, and that's entirely appropriate. And that is what this court's precedents say, that a ratification is not a new agency proceeding. It's a look back. It's a principle looking back at the conduct of its agent. Typically, occasionally, it is the same official. That's not what we have here. But looking back at what its agent did and expressing approval with knowledge about the thing that was done at the time. So absolutely, Your Honor, is correct that our argument is that the record was closed. That's the record we have. We do make the further point that- Just very briefly put, do you concede that counsel for the opposing party was correct that ordinarily a ratification after the issue is joined is not a valid ratification? No, I don't agree with that. Okay. Is not there- There is law of agency to that effect, is there not? This court's decisions have repeatedly honored ratification and found it sufficient to remedy an alleged violation, even when it is brought after, you know, in the course of proceedings. So we see that in Legitech. We see that in Wilkes-Barre. Which case is that in? That's in Legitech. That's in Wilkes-Barre. In both cases, we had ongoing enforcement proceedings. At the time that the ratification occurred. And in Getty's, the issue wasn't decided fully, but there too, there was a rulemaking, a final rule that was promulgated by an officer, the validity of whose appointment was in question. While the case was on appeal, the attorney general ratified that final rule. And that was treated as resolving the matter, notably on the merits, not as mooting the case, but resolving it on the merits. And that's also stated in the court's other cases. With respect to the Califf ratification, to the point that the ratification is somehow improper because or insufficient because it wasn't done for the express purpose of curing a particular type of problem. There's nothing in the case that suggests that. The validity of a ratification turns on whether the ratifier had authority, knowledge, and intent, and that intent is intent to approve the thing done, not intent to correct a particular problem with the thing done. There's no case to suggest that it needed to be with reference to an alleged appointments clause problem at that time. Can you talk a little bit about the voluntary cessation exception and why if you're wrong about ratification during the dispute, resolving the merits rather than mooting the claim, if you're wrong about that, what would your position be on whether the appellants have reason to be concerned that the conduct would recur? Yes, Your Honor. So with voluntary cessation, it's important to be clear about what it is that we're worried about recurring. And the wrong that has to plausibly recur is the wrong to plaintiffs. And so here we have a valid ratification of the deeming rule. That's not, that ratification can't be undone. So the appointments clause defect alleged with respect to that rule is now cured. If it were thought that FDA might in the future with respect to future rules, you know, undertake a similar signing by Ms. Cox, it's not clear that that would cause any harm to plaintiffs. It's not as though they're affected by every single rule. I do want to note that so Ms. Cox's authority was always shared by the commissioner and the secretary. It was delegated to her by them. And it has recently been revoked. So as of September 15th, the secretary has announced that he will be signing all rules coming out of the department. So I think as a factual matter, that may also bear on plaintiff's mootness argument here. But even without that, there's no reason to think that any future wrong would actually injure them in a relevant sense. So as to, you know, make that doctrine applicable. You're saying it's almost a lion's problem there with raising the notion that that voluntary cessation creates a risk of harm to them. Yes. Yes, Your Honor. That's correct. And I think that the secretary's memo as recently issued does again underscore the just sort of the framework within which Ms. Cox was always operating. She emphatically was an inferior officer at the time. She could always be removed with very little showing or reassigned by the commissioner or HHS. And as recently happened, her authority could always be revoked simply by ending the delegation. And so that that authority is now with the secretary. If there are no further questions, we ask that you affirm. Thank you, Your Honor. This court should absolutely be concerned about FDA's whack-a-mole approach to the Appointments Clause. The bottom line is, they argue that a boilerplate provision that is issued in every delegation document automatically invalidates       the court should absolutely be concerned about FDA's whack-a-mole approach to the Appointments Clause. The bottom line is, FDA's whack-a-mole approach to the Appointments Clause invalidates anything the agency has ever done. And then their fallback argument is that an official can selectively ratify something that has been challenged in litigation while ignoring the evidence that's before him. And this means that the plaintiff must be denied relief. If that is upheld, there's little reason for any plaintiff in my client's or any other person's shoes to bring an Appointments Clause claim. At the end of the day- What would you say about the Legitech argument that counsel made? Legitech comes up in a couple of times, but I think you may be referring to the argument for Gottlieb. Legitech says that as a matter of discretion, the court will accept ratification in circumstances where it's clear the outcome at the end of the day would be the same, that the agency would just reissue the same rule or make the same decision in adjudication. Here, the government can't make that showing because of the studies we point to that are before the agency and under Butte County would have to be considered. We went beyond the record to find things like that. This is after the record closed if that study occurred, wasn't it? Or it was reported, excuse me. The studies were before the ratification and that's where you get the- Well, let's say the record closed in the allegedly invalid decision of the interior official. The record at that point did not include the studies, did it? That's right. If we look beyond that record to determine what the decision, that the decision would have been the same. Yes, and I know if no precedent says anything to the contrary, we read the case- Do you know anything that says to your position? That's right. If there's no authority, no precedent to the contrary, is there anything that supports you? I think that the dicta in Legitech does support us by saying that the plaintiff there had pointed to nothing they would address in a new comment that might change the agency's mind. That's what distinguishes this case from that one. But more importantly, we see ratification as standing in the shoes of the invalid prior agency action. And therefore, Butte County would apply to that ratification and any information before the official at the time would have had to be considered. Here it wasn't, therefore the official didn't have the authority to ratify. I see him out of my time. Thank you. You should refer. Thank you. Thank you, counsel. We'll take the case under advisement.
judges: Rogers, Pillard, Sentelle